No. A-CV-19-89
# Supreme Court of the Navajo Nation

**Johnny R. Thompson, Appellant,**
v.
**The Navajo Nation, et al., Appellees.**
**Decided May 25, 1990**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Daniel Deschinny Sr., Esq., Window Rock, Arizona, for the Appellant; and Stanley M. Pollack, Esq., and David P. Frank, Esq., Navajo Nation Department of Justice, Window Rock, Arizona, for the Appellees.

Opinion delivered by Tso, Chief Justice.

Appellant Johnny R. Thompson, Vice Chairman of the Navajo Tribal Council, appeals the decision of the Window Rock District Court dated May 17, 1989. In its decision the district court held that Navajo Tribal Council Resolution CMA-10-89, which placed appellant on paid administrative leave, was a valid, lawful, and enforceable Resolution of the Navajo Tribal Council. We affirm the district court decision.

I

On March 10, 1989, the Navajo Tribal Council passed Resolution CMA-10-89 during its session held at the Navajo Education Center in Window Rock, Navajo Nation (Arizona). The Resolution, as certified, states that the Council met in a properly convened session with a quorum present. The Council passed the Resolution with a majority of the quorum voting for its passage.

Resolution CMA-10-89 divested appellant of his executive and legislative authorities and it placed him on paid administrative leave for the following reasons: (1) After Chairman Peter MacDonald Sr. was placed on paid administrative leave by the Council, appellant failed to take command as acting chairman. Appellant was unwilling, and failed, to carry out the duties and obligations of the office of chairman; (2) Appellant indicated that he will be subject to the influence of suspended Chairman Peter MacDonald Sr.; (3) Appellant is implicated by allegations that the MacDonald/Thompson candidacy filed fraudulent campaign contribution and expense reports and accepted campaign contributions from non-Navajos; (4) Appellant and the Advisory Committee delayed forward-

ing the *Hawkins Report* to the Navajo Tribal Council when they were under a duty to do so; and (5) Appellant will have to devote substantial time to defending himself against allegations of wrongdoing. Despite being placed on paid administrative leave, appellant continued to exercise the powers of the office of vice chairman.

On March 22, 1989, the Navajo Nation Department of Justice, on behalf of the Navajo Nation (Nation), filed this action against Chairman MacDonald, the appellant and others by seeking injunctive and declaratory relief. The part of the suit against appellant sought to enforce Resolution CMA-10-89 by enjoining appellant from exercising the powers of the Office of Vice-Chairman of the Navajo Tribal Council. The court issued a temporary restraining order. Appellant then applied to this Court for a writ of mandamus to prohibit the district court from exercising its jurisdiction. We denied the application for the writ. *MacDonald Sr. v. Honorable Robert Yazzie*, 6 Nav. R. 95 (1989).

While the application for the writ was pending, Chairman MacDonald purported to terminate the district judge sitting on this case and hand picked the judge's successor. This action threw into question the authority of the district judge to sit on this case at trial. Consequently, the district court certified four questions to this Court. We answered all four questions including the one relevant to this appeal: we held that the Navajo Tribal Council has authority to place a chairman and a vice chairman on paid administrative leave if certain conditions are met. *In re Certified Questions II, Navajo Nation v. MacDonald Sr.*, 6 Nav. R. 105 (1989). This Court then instructed the district court to determine whether Resolution CMA-10-89 was properly adopted and whether it violated the prohibition against bills of attainder.

On April 18, 1989, the parties agreed to have a preliminary injunction entered. On May 2-4, 1989, the district court held a bifurcated hearing on, among others, two issues relevant to this case: 1) Whether Resolution CMA-10-89 was valid; and 2) Whether the appellant violated the terms of Resolution CMA-10-89.

At trial the Nation introduced the following evidence: 1) A certified copy of Resolution CMA-10-89. The certification stated that it was passed at a duly called meeting with a quorum of the Council present and a majority of the delegates present voted for its passage; 2) Minutes of the March 10, 1989 Navajo Tribal Council session indicating that the session was held at the Navajo Education Center. The minutes also showed that the vote on the Resolution was 37 in favor, 2 opposed and 6 abstaining. The minutes further showed a quorum of 46 council delegates present when the session was called to order by the presiding chairman.

At the close of the Nation's case, appellant moved for a directed verdict which was denied. Appellant then rested his case without presenting any witnesses or evidence. Specifically, appellant offered no evidence that a quorum did not exist. Appellant even stipulated that he did not want to present any evidence on the second phase of the bifurcated hearing concerning the issue of whether appellant violated the terms of Navajo Tribal Council Resolution CMA-10-89.

On May 17, 1989, the district court decided that Resolution CMA-10-89 was valid, and Resolution CMA-10-89 was not a bill of attainder. Consequently, a permanent injunction and a declaratory judgment were entered against appellant.

Appellant filed this appeal on June 16, 1989. On appeal the appellant framed the issues as follows: 1) Whether the lower court erred in denying appellant's motion for a directed verdict at the close of the Navajo Nation's case-in-chief; 2) Whether a bill of attainder is present, adducible from the records of the lower court; 3) Whether the lower court erred in its evidentiary rulings; and 4) Whether the lower court failed to properly ascertain Navajo public policy and applicable federal law.

## II

In our decision answering the certified questions, we held that the Navajo Tribal Council has authority to place the vice-chairman on administrative leave with pay if certain conditions are met. We directed the district court on remand to decide whether Resolution CMA-10-89, placing appellant on administrative leave with pay, had been properly adopted and whether Resolution CMA-10-89 violated the prohibition against bills of attainder. *In re Certified Questions II, id.*

The Navajo courts have the power to determine the validity of resolutions passed by the Navajo Tribal Council. *Halona v. MacDonald*, 1 Nav. R. 189 (1978). The core of this case involves the validity of Resolution CMA-10-89. The Nation filed this suit seeking to enforce the Resolution. In defense, the appellant raised the issue of the validity of the Resolution. We also directed the district court to determine whether the Resolution was valid by looking at the manner in which it was adopted and to test it against the law used to determine whether a legislative act is a bill of attainder. *In re Certified Questions II*, 6 Nav. R. 105.

This Court has not had an opportunity, previous to this case, to pronounce a standard to be used in determining the validity of a Council resolution. That does not mean that the lower courts were without guidelines. In *Benally v. Gorman*, 5 Nav. R. 273 (Window Rock Dist. Ct. 1987), the Window Rock District Court pronounced a standard, which we agree is the proper standard, to be used to test the validity of legislative acts. The court in *Benally* said as follows: "When a court is faced with reviewing any legislative action, that review must be conducted under certain principles. The main principle of judicial review is the presumption that the legislative act is proper and legal." 5 Nav. R. at 275. This same standard was first articulated by the same district court in an earlier decision. In *Damon v. MacDonald*, 4 Nav. R. 138, 140 (Window Rock Dist. Ct. 1983), the court said as follows: "This Court follows the presumption of validity that attaches to official acts, particularly those of the legislature...."

The reason behind this presumption is the belief that public officials normally perform the duties of their offices in a proper manner. Likewise, the Council in exercising its legislative function is presumed to have done its job properly, faithfully, and within the bounds of law. The Council, as the people's servant, is

presumed to act in the best interests of the people. For these reasons, we now pronounce that resolutions of the Navajo Tribal Council are presumed to be valid and the party seeking to challenge the validity of any Council resolution has the burden of rebutting that presumption with clear evidence to the contrary.

The presumption that a Council resolution is valid imposes upon the party against whom it is invoked the duty to offer clear evidence to rebut the presumption. The evidence of invalidity must be clear evidence, otherwise Council resolutions could be overturned by our courts based simply upon surmise or speculation. *See Damon,* 4 Nav. R. at 140. In the absence of such clear evidence, the court will have no choice but to render a ruling consistent with the presumption. In this case appellant alleged that Resolution CMA-10-89 is invalid. Thus, appellant had the burden of presenting clear evidence to the district court to rebut the presumption that the Resolution is valid.

This Court has no difficulty in concluding that the appellant failed to come forward with clear evidence to show the invalidity of Resolution CMA-10-89. The appellant simply offered no evidence whatsoever. The Nation introduced its evidence which included a certified copy of Resolution CMA-10-89 and the minutes of the March 10, 1989 Council session. The Nation then rested. Appellant then moved for a directed verdict, which was denied, and then rested without presenting any evidence. Under these facts the district court had no choice but to rule in accordance with the presumption and hold that Resolution CMA-10-89 is valid.

The appellant made no effort to satisfy his burden and under these circumstances we conclude that the presumption of validity becomes conclusive. Consequently, we need not address any of the issues presented by the appellant. Nonetheless, we will address two points heavily relied upon by appellant which he claims shows "clear evidence of irregularity" in the passage of Resolution CMA-10-89.

The appellant first argues that at the time the council delegates voted on Resolution CMA-10-89, they did not have a quorum. Appellant relies upon the minutes of the March 10, 1989 Council session which show that when the first vote was taken on proposed Resolution CMA-10-89, only 43 delegates voted. Another vote was immediately taken and this time 45 delegates voted on the Resolution. The second vote is the vote that made Resolution CMA-10-89 official; not the first vote.

The appellant's argument has no merit. First, we reviewed the entire minutes of the March 10, 1989 Council session and found that when the session to conduct business was called to order by the presiding chairman, a quorum, comprised of 46 delegates, was present.[1] Second, the resolution that officially became Resolution CMA-10-89, and the one that appellant claims is invalid, shows on

---

1. A quorum of the Council consists "of a simple majority of all voting members of the Navajo Tribal Council." 2 N.T.C. § 172(a). "When a quorum is present, any motion or resolution shall be passed if it receives a majority of all votes cast, *irregardless of how many members actually vote....*" (emphasis added). 2 N.T.C. § 172(b). There are currently 88 delegates on the Council and 45 dele-

its face that 45 delegates voted for it. The first vote did not produce a resolution. We conclude, as did the district court, that the appellant did not present clear evidence by way of witnesses or otherwise to show that a quorum was not present. In the absence of clear evidence to the contrary, the presumption that a quorum of the Council was present controls.

The appellant also argues that Resolution CMA-10-89 is invalid because the Resolution was passed while the delegates were illegally convened at the Navajo Education Center. The appellant claims that the law requires all Council sessions to be held at the Navajo Tribal Council Chambers. The appellant relies upon 2 N.T.C. § 161 (1972), which is as follows:

> All regularly scheduled or special meetings of the Navajo Tribal Council shall be held at the Navajo Tribal Council Chambers located at Window Rock, Arizona with the following exceptions:
>
> (1) If the Chairman of the Navajo Tribal Council shall declare by written statement that the Chambers at Window Rock are unsuitable for meeting, whether because of fire, physical damage, remodeling or other cause, the Chairman shall designate an alternate meeting place in or near Window Rock, and he shall give reasonable notice to all Council delegates of such fact.
>
> (2) A majority of all Council delegates may agree to hold a meeting in some location other than the Chambers at Window Rock. Such agreement may be by written petition or by motion at any regular or special session of the Navajo Tribal Council.

Again the presumption of validity controls the decision on appellant's second point. Appellant did not present clear evidence to show that the Chairman of the Navajo Tribal Council did not designate an alternate meeting place pursuant to section 161(1) above. The appellant further did not present clear evidence to show that a majority of the council delegates did not petition or pass a motion to meet at a place other than the Council Chambers pursuant to section 161(2). The appellant simply relies on speculation.

The appellant had the burden to present clear evidence to rebut the presumption of validity of Resolution CMA-10-89 and he has chosen not to do so. Consequently, we are under no obligation to address any of the issues presented by appellant. The presumption of validity is conclusive as a matter of law. The district court did not err in denying the motion for directed verdict. The decision of the district court is affirmed in its entirety.

gates make a quorum. We note that the part of section 172(b) quoted above may be construed to mean that once a quorum has been declared to commence the session, less than 45 delegates can vote on a resolution and the resolution can be valid.